LOUIS H. ROGERS, PLAINTIFF IN ERROR, v. ROE & CON-
OVER, DEFENDANTS IN ERROR.

Argued November 21, 1906—Decided March 4, 1907.

1. A servant who knows that a tool or appliance furnished to him
by his master is defective does not, on that account, assume the
risk of injury resulting from its use. It is not the obviousness of
the physical condition or situation which charges the servant with
the assumption of the risks that arise from it, but the obviousness
of the danger which the physical condition or situation produces.

2. The fact that a master furnishes to his servant, for use by the
latter in his work, a tool or appliance which is defective, will not
justify the conclusion that the master did not use reasonable care
to furnish a safe tool or appliance, unless (1) the defect was of
such a character as to suggest to an ordinarily prudent person
that there was danger of injury in the use of the tool or appli-
ance, or (2) unless prior use of the tool or appliance, in its de-
fective condition, had disclosed that it was dangerous, and the
master knew or ought to have known that this was the case.

On error to the Essex Circuit Court.

For the plaintiff in error, *Samuel W. Boardman, Jr.*

For the defendants in error, *Sherrerd Depue.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This suit is brought to recover
compensation for injuries received by the plaintiff through a
fall while at work upon a ladder, and in the service of the de-
fendants, at their store in the city of Newark. The defend-
ants were engaged in the business of selling plumbers' and
steamfitters' supplies. These supplies were kept in rows of
bins, or pigeon-holes, which had been constructed along the
walls of their store, and which extended from the floor nearly
to the ceiling. The lower rows of bins were deeper than the
upper ones, and this method of construction left a ledge, or
shelf, about three feet from the floor. For the purpose of
affording access to the upper rows, "trolley" ladders were pro-
vided, which were, each of them, suspended by two grooved

wheels from a track, or iron pipe, running along the walls and fastened to them near the ceiling. To render the ladders easily movable along this pipe, or track, rubber rollers were affixed to their sides at the points of their contact with the ledge, or shelf, above described, and revolved along it as the ladders were shifted from place to place. As these ladders were originally constructed, there was, below each of the grooved wheels by which the ladders were suspended, a metal projection, or lug, about an inch and a half long and half an inch wide, which extended under, and in close proximity to, the iron pipe, or track, for the purpose of preventing the grooved wheels from leaving the track. The ladder upon which the plaintiff was at work when the accident occurred had one of these lugs broken off. The plaintiff had mounted it for the purpose of taking some steamfitters' supplies from a bin in one of the upper tiers. This bin was a little to one side of the ladder, and its position made it necessary for the plaintiff to lean out beyond the side of the ladder to accomplish his purpose. The throwing of his weight to one side caused first one of the grooved wheels to leave the track, and then the other, and the ladder, with the plaintiff upon it, fell to the floor. The plaintiff had no knowledge of any previous occurrence of the kind. This lug had been broken from the ladder more than two years before the occurrence of the accident, and the contention of the plaintiff at the trial was that the defendants were chargeable with knowledge of its defective condition, and that their failure to repair it was a neglect of the duty which they owed him of using reasonable care in furnishing him with safe appliances for his work. The trial judge considered that the failure to repair the ladder was a neglect of this duty, but held that its defective condition was obvious, and that, therefore, the plaintiff assumed the risk of dangers resulting from the absence of the lug. For this reason he directed a nonsuit to be entered against the plaintiff.

The plaintiff assigns error upon that instruction.

As will be perceived from the above description of the construction of the ladder, and the method of its operation, the

location of the lug was at its top, near the ceiling, and we cannot concur in the view held by the trial judge that its absence was so plainly apparent that every person using the ladder was chargeable with notice of that fact. Taking into consideration its location, and its size, the question whether its absence was obvious to persons using the ladder was, in our opinion, one for the determination of the jury rather than of the court. But even if the absence of the lug should be considered to have been obvious, it cannot be said, as a matter of law, that its absence made it obvious that the ladder was defective or out of repair in any of its parts. To a person unacquainted with the method of the construction of these ladders it might very readily appear that the ladder had been originally constructed with a lug under only one of the trolley wheels. The question whether the absence of the lug was an obvious defect was, therefore, in our judgment, also one for the determination of the jury. Furthermore, the resolution of each of these questions against the plaintiff is not fatal to his right to recover. It does not necessarily follow that, because the absence of the lug from the ladder was obvious, and the knowledge of the defective condition of that appliance was therefore imputable to the plaintiff, he is to be held to have assumed the risk of injury resulting from its use. It is not the obviousness of the physical situation or condition that charges the servant with the assumption of the risks which arise from it, but the obviousness of the dangers which the physical condition or situation produces. *Burns* v. *Delaware and Atlantic Telephone Co.,* 41 *Vroom* 745, and cases cited. Whether, therefore, the plaintiff assumed the risk of the ladder becoming detached from the pipe, or track, from which it was suspended, while he was using it, did not depend upon his knowledge of the absence of the lug, or upon his knowledge that the ladder was defective by reason of that absence, but upon whether the want of a lug rendered the likelihood of such an accident as happened to him apparent to an ordinarily prudent person. Viewed in the most favorable aspect for the defendants, this was a doubtful question of fact to be settled by the jury.

But it does not necessarily result, from the conclusion which we have reached upon this point, that the judgment of nonsuit was erroneous, for the plaintiff was not entitled to go to the jury unless the case made by him sustained his contention that the defendants failed in their duty to use reasonable care to furnish him with safe appliances for his work by permitting this ladder to remain in use without the lug. If—instead of its being obvious that the absence of one of the lugs made it probable that the ladder would become detached from the track upon which it ran, provided a person standing upon it should throw his weight over to one side—no one would reasonably anticipate such an occurrence, then, not only would the plaintiff be absolved from the assumption of the risk of such an accident as befell him, but the defendants would be guilty of no failure in the discharge of the duty which they owed him. It seems to us entirely plain, however, that whether the absence of the lug did or did not afford reasonable ground for anticipating that such a result would follow, was (as we have already stated) not so free from doubt as to make it a question for the court rather than for the jury.

Moreover, a witness, called by the plaintiff, who had formerly been in the employ of the defendants, testified that, during the time when he worked in their store, the ladder "used to come off the track once in awhile when you got on it sideways; if you went up sideways it might go off; if you went up in the middle it was all right." The fact that the ladder did become detached from the track when used in the manner described overcame the presumption (assuming it to have existed) that the absence of the lug did not render it unsafe for use; and it was for the jury to determine whether the defendants, as employers, were not chargeable with knowledge of that fact.

The nonsuit cannot be supported either upon the ground of assumed risk on the part of the plaintiff or on the ground of lack of proof of failure of duty on the part of the defendants. The judgment must therefore be reversed.

*For affirmance*—GRAY, J.  1.

*For reversal*—THE CHIEF JUSTICE, GARRISON, FORT, GAR-RETSON, HENDRICKSON, PITNEY, SWAYZE, TRENCHARD, VREDENBURGH, VROOM, GREEN, DILL, J.J.  12.